1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

G.S.,

                          Petitioner,

        v.

DREW BOSTOCK, et al.,

                          Respondents.

Case No. 2:25-cv-01255-JNW-TLF

REPORT AND
RECOMMENDATION

Noted for October 23, 2025

11    Petitioner G.S. is an asylum seeker from India. Petitioner was initially detained

12 and then released on his own recognizance on June 13, 2024. Dkt. 1. On June 24,

13 2025, petitioner was re-detained by ICE when he appeared at ICE's Eugene, Oregon

14 field office for his previously scheduled check-in appointment. Dkt. 1. The same day,

15 petitioner filed a petition for writ of habeas corpus with the U.S. District Court for

16 Oregon. Dkt. 1. The case was subsequently transferred to this Court because petitioner

17 was physically in Washington. Dkt. 13.

18    After the Tacoma immigration court twice found petitioner not eligible for bond,

19 petitioner filed a motion for temporary restraining order, which Judge Marsha J.

20 Pechman granted. Dkt. 28, 30. Petitioner was released from detention and Judge

21 Pechman ordered the Government not to re-detain petitioner absent advance notice

22 and leave of this Court. Respondents were also ordered to return petitioner's removal

23 proceedings to the jurisdiction of the Portland, Oregon immigration court. Dkt. 30.

24
25

REPORT AND RECOMMENDATION - 1

Before the Court is Respondents' motion to dismiss and return. Dkt. 24. Respondents argue that petitioner is (was) subject to mandatory detention under 8 U.S.C. § 1225(b), and that the Court should require petitioner to seek an administrative appeal of the Tacoma immigration court's decision finding him subject to mandatory detention to the Board of Immigration Appeals ("BIA") prior to seeking habeas relief. *See* Dkt. 24 at p. 6-8.

In response to the motion to dismiss, petitioner argues any appeal to the BIA would be futile in light of the BIA's recent decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 227-228 (BIA 2025), in which it concluded that all noncitizens who have not been admitted or paroled are subject to mandatory detention under 8 U.S.C. § 1225(b). Dkt. 31. Petitioner further argues his substantive and procedural due process rights were violated by Respondents when he was re-detained on June 24, 2025. Petitioner requests that this Court issue a writ of habeas corpus, ordering Respondents to refrain from re-detaining him absent a pre-detention hearing in which Respondents have the burden of demonstrating changed circumstances sufficient to prove petitioner is either a flight risk or a danger to the community.

As explained below, the Court should **GRANT** petitioner's habeas corpus petition and Order Respondents to refrain from re-detaining petitioner without a pre-detention hearing.

## I.    STATUTORY BACKGROUND

A. Full Removal Proceedings (8 U.S.C. 1229a) vs. Expedited Removal Proceedings (8 U.S.C. 1225)

Full removal proceedings under 8 U.S.C. § 1229a are "the standard mechanism for removing inadmissible noncitizens." *Make the Rd. N.Y. v. Noem*, No. 25-cv-190 (JMC), 2025 WL 2494908, at *2 (D.D.C. Aug. 29, 2025); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020) ("The usual removal process involves an evidentiary hearing before an immigration judge, and at that hearing an alien may attempt to show that he or she should not be removed."). These proceedings are initiated by serving the noncitizen with a Form I-862 "notice to appear" in immigration court. 8 U.S.C. § 1229(a)(1).

Full removal proceedings "take place before an [immigration judge ("IJ")], an employee of the Department of Justice (DOJ) who must be a licensed attorney and has a duty to develop the record in cases before them." *Coal. for Humane Immigrant Rts. v. Noem*, No. 25-cv-872 (JMC), —— F.Supp.3d ——, ——, 2025 WL 2192986, at *3 (D.D.C. Aug. 1, 2025) (citing 8 U.S.C. § 1229a(a)(1), (b)(1)).

In full removal proceedings, noncitizens have rights to hire counsel, to a reasonable opportunity to examine evidence against them, to present evidence on their own behalf, and to cross-examine any government witnesses. 8 U.S.C. § 1229a(b)(4)(A)–(B). "[D]ue to the built in procedures," full removal proceedings "typically take[ ] place over the course of multiple hearings," which "allows time for noncitizens to both gather evidence in support of petitions for relief available in immigration court ... and seek collateral relief from other components of [the Department of Homeland Security ("DHS")]." *Coal. for Humane Immigrant Rts.*, —— F.Supp.3d at ——, 2025 WL 2192986, at *3. Either party can appeal the IJ's decision to the BIA, and if the BIA

upholds a removal order, the noncitizen can appeal that decision to a United States court of appeals. 8 C.F.R. §§ 1240.15, 1003.1; 8 U.S.C. § 1252.

By contrast, expedited removal proceedings are a "more streamlined ... form of proceeding applicable only to certain noncitizens," whereby removal orders are "usually issued within a few days, if not hours." *Id.* (citation omitted). In expedited removal proceedings, the initial fact finder is an immigration officer, not an IJ. 8 C.F.R. § 235.3(b)(2)(i). The immigration officer asks the noncitizen a series of questions regarding (1) their "identity, alienage, and inadmissibility," and (2) their "intention to apply for asylum" or potential fear of persecution, torture, or return to their country. *Id.* at § 235.3(b)(2)(i), (b)(4). During this questioning, noncitizens do not have a right to counsel. *Id.* at § 235.3(b)(2)(i). If the immigration officer determines that the noncitizen is inadmissible under section 1182(a)(6)(C) or 1182(a)(7), "the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 ... or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i).

If the noncitizen claims they intend to apply for asylum or they fear persecution, additional procedures apply. In such cases, "the inspecting officer shall not proceed further with removal of the alien until the alien has been referred for an interview by an asylum officer in accordance with 8 CFR 208.30." 8 C.F.R. § 235.3(b)(4). "The point of this screening interview is to determine whether the [noncitizen] has a 'credible fear of persecution.' " *Thuraissigiam*, 591 U.S. at 109 (quoting 8 U.S.C. § 1225(b)(1)(B)(v)). If the officer finds that the noncitizen's fear of persecution is credible, they will receive "full

consideration of the asylum and withholding of removal claim" in full removal

proceedings or USCIS administrative asylum proceedings. 8 C.F.R. § 208.30(f).

If the officer finds the noncitizen's fear of persecution is not credible, "the officer

shall order the alien removed from the United States without further hearing or review."

8 U.S.C. § 1225(b)(1)(B)(iii)(I). But, the noncitizen may appeal the decision to an IJ, who

shall review the determination "as expeditiously as possible, to the maximum extent

practicable within 24 hours, but in no case later than 7 days after the date of the

determination." *Id.* at § 1225(b)(1)(B)(iii)(III).

B.  Detention Under 8 U.S.C. 1226

8 U.S.C. § 1226 "provides the general process for arresting and detaining aliens

who are present in the United States and eligible for removal." *Rodriguez Diaz v.

Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). The provision "distinguishes between two

different categories" of noncitizens. *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018).

Under section 1226(a), the "default rule," *id.*, a noncitizen "may be arrested and

detained" "[o]n a warrant issued by the Attorney General" if their removal proceedings

are pending, 8 U.S.C. § 1226(a). Detention pursuant to section 1226(a) is not

mandatory. If the noncitizen was not charged with, arrested for, or convicted of certain

criminal offenses enumerated in section 1226(c), the government has discretion to

release them on "bond of at least $1,500 with security approved by, and containing

conditions prescribed by, the Attorney General; or ... conditional parole." *Id.* at §

1226(a)(2)(A)–(B).

"Federal regulations provide that aliens detained under § 1226(a) receive bond

hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§

1    236.1(d)(1), 1236.1(d)(1)). "If, at this hearing, the detainee demonstrates by the

2    preponderance of the evidence that he or she is not a threat to national security, a

3    danger to the community at large, likely to abscond, or otherwise a poor bail risk, the IJ

4    will order his or her release." *Salcedo Aceros v. Kaiser,* No. 25-cv-06924-EMC, 2025

5    WL 2637503, at *1 (N.D. Cal. Sept. 12, 2025). *See also Hernandez v. Sessions*, 872

6    F.3d 976, 982 (9th Cir. 2017) (The noncitizen must "establish to the satisfaction of the

7    Immigration Judge…that he or she does not present a danger to persons or property, is

8    not a threat to the national security, and does not pose a flight risk.")

9         The noncitizen's bond or parole can be revoked at any time, even if the

10   noncitizen was previously released; yet, if an IJ has determined the noncitizen "should

11   be released, the DHS may not re-arrest that noncitizen absent a change in

12   circumstance." *Id.*

13        Section 1226(c) "carves out a statutory category of aliens who may *not* be

14   released" on bond or conditional parole. *Jennings*, 583 U.S. at 289. It provides that the

15   "Attorney General shall take into custody any alien" who falls into one of the five

16   enumerated categories involving criminal offenses and terrorist activities. 8 U.S.C. §

17   1226(c)(1).

18        Several of these categories were added to the INA in January 2025, by the

19   Laken Riley Act ("LRA"). Pub. L. No. 119-1, 139 Stat. 3 (2025); 8 U.S.C. §

20   1226(c)(1)(E). The LRA amendments require detention for noncitizens who have been

21   charged as inadmissible under sections 1182(a)(6)(A) (the inadmissibility ground for a

22   noncitizen "present in the United States without being admitted or paroled"),

23

24

25

1  1182(a)(6)(C) (misrepresentation), or 1182(a)(7) (lacking valid documentation) *and* have

2  been arrested for, charged with, or convicted of certain crimes. *Id.*

3      The Attorney General may release a noncitizen that is subject to detention under

4  section 1226(c), but only if they decide that releasing the noncitizen is necessary for

5  witness-protection purposes and that the noncitizen is not a danger to the community or

6  a flight risk. § 1226(c)(4).

7      C.  Detention under 8 U.S.C. 1225

8      8 U.S.C. § 1225 enumerates the procedures allowing the government to detain

9  (mandatory detention) certain "applicants for admission." Under section 1225, an

10  "applicant for admission" is a noncitizen "present in the United States who has not been

11  admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1).

12      Section 1225(b)(1) authorizes expedited removal for certain "applicants for

13  admission" in two categories.

14      First, noncitizens "arriving in the United States" that are determined by an

15  immigration officer to be inadmissible due to misrepresentation or failure to meet

16  documents requirements. *Id.* at § 1225(b)(1)(A)(i); *see also id.* at § 1182(a)(6)(C), (a)(7).

17      Second, noncitizens that (a) are inadmissible because of misrepresentation or

18  failure to meet documents requirements; (b) have not "been admitted or paroled into the

19  United States"; (c) have not "affirmatively shown, to the satisfaction of an immigration

20  officer, that [they have] been physically present in the United States continuously for the

21  2-year period immediately prior to the date of the determination of inadmissibility"; and

22  (d) have been designated by the Attorney General for expedited removal. *Id.* at §

23  1225(b)(1)(A)(iii).

24

25

These two categories of noncitizens subject to section 1225(b)(1) are subject to mandatory detention "until certain proceedings have concluded." *Jennings*, 583 U.S. at 297. Individuals that fall into section 1225(b)(1) are "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process" unless claiming asylum or a fear of persecution. *Jennings,* 53 U.S. at 287 (first quoting § 1225(b)(1)(A)(i); then citing § 1225(b)(1)(A)(ii)).

Noncitizens who are "seeking admission" and not covered by the expedited removal provisions in section 1225(b)(1) are subject to section 1225(b)(2). *See id.* at 287. This category would include, for example, noncitizens who are arriving in the United States, seek admission, and are inadmissible for some reason other than misrepresentation or failure to meet documents requirements. *See* 8 U.S.C. § 1182(a)(2)–(3). Subject to limited exceptions, the section provides that such noncitizens "shall be detained" for full removal proceedings under section 1229a "if the examining immigration officer determines" that the noncitizen "is not clearly and beyond a doubt entitled to be admitted." *Id.* at § 1225(b)(2)(A).

Thus, noncitizens detained under § 1225(b)(2) must remain in custody for the duration of their removal proceedings. *See Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *3 (W.D. Wash. Sept. 30, 2025).

Until this year, DHS has applied section 1226(a) and its discretionary release and review of detention "to the vast majority of noncitizens allegedly in this country without valid documentation"—a practice codified by regulation. *Salcedo Aceros,* 2025 WL 2737503, at *3.

The Government now contends that mandatory detention under Section 1225 is the appropriate detention authority for noncitizens, such as petitioner, who have not been admitted or paroled. *See* Dkt. 24 at 7 (citing *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020)).

## II.    FACTUAL BACKGROUND

On June 12, 2024, petitioner was detained by DHS officers in Stoerrs, New York, after entering the United States without inspection. Dkt. 26-1 at 4. The following day, on June 13, 2024, petitioner was served a notice to appear -- placing him in removal proceedings under 8 U.S.C. § 1229a, and he was released on his own recognizance pursuant to 8 U.S.C. § 1226(a) and 8 CFR § 1236.1(c)(8). Dkt. 26-2 at 2; Dkt. 26-3 at 2. After being released from custody, petitioner moved to Oregon, and venue for removal proceedings were changed from New York to Portland, Oregon, on September 23, 2024. Dkt. 28 at Exhibit A.

On December 5, 2024, petitioner, pro se, filed an I-589 application for asylum with the immigration court in Portland. Dkt. 28 at Exhibit B.

In May 2025, after petitioner's counsel filed a notice of attorney appearance before the Portland immigration court, petitioner's master calendar hearing was canceled and petitioner filed written pleadings with the immigration court. Dkt. 28 at Exhibit C.

On June 24, 2025, petitioner attended his scheduled appointment at the ICE field office in Eugene, Oregon. Dkt. 26-4 at 3. At that time, petitioner was detained by Respondents pursuant to 8 U.S.C. § 1226(a) and transferred to Tacoma, Washington. Dkt. 26-6 at 2; Dkt. 26-7 at 2; Dkt. 26-5 at 5.

1    Also on June 24, 2025, petitioner filed this petition for writ of habeas corpus with the

2    U.S. District Court for Oregon. Dkt. 1. Because petitioner was physically in Washington

3    in route to Tacoma at the time of filing the petition, the Oregon Court transferred

4    petitioner's case to this Court. Dkt. 12.

5    A custody redetermination hearing was scheduled for July 8, 2025; the immigration

6    judge determined that petitioner was not eligible for bond, citing 8 U.S.C. § 1225(b) and

7    *Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025). Dkt. 26-8 at p. 2. On August 4, 2025, the

8    Tacoma immigration court conducted a master calendar hearing and scheduled

9    petitioner for an individual hearing on September 15, 2025. On August 9, 2025,

10   petitioner again sought a custody redetermination hearing with the Tacoma immigration

11   court and on August 15, 2025, the Tacoma court again found petitioner is subject to

12   mandatory detention. Dkt. 26-9 at p. 2.

13   On August 27, 2025, Respondents filed a motion to dismiss and return. Dkt. 24.

14   Petitioner filed a motion for temporary restraining order on September 4, 2025, asking

15   the Court to order petitioner to be immediately released, return his immigration case to

16   Portland, Oregon immigration court, and restore the status quo. Dkt. 28. The Honorable

17   Marsha J. Pechman granted petitioner's motion ordering Respondents to immediately

18   release petitioner from detention, return petitioner's removal proceedings to Portland,

19   Oregon, and ordered that petitioner shall not be re-detained absent advance notice to

20   and leave of this Court[1]. Dkt. 30.

21

22

23

---

24   [1] After this Order was entered, the case was transferred to the Honorable Jamal Whitehead.

25

REPORT AND RECOMMENDATION - 10

1    On September 24, 2025, Respondents filed a notice notifying the Court that

2    petitioner's removal proceedings have been transferred to the Portland Immigration

3    Court. Dkt. 34.

4    Respondents filed a motion to dismiss and a return, concerning the petitioner's

5    habeas corpus petition. Petitioner filed a response on September 11, 2025. Dkt. 31.

6    Oral argument took place on October 3, 2025. The motion to dismiss and habeas

7    petition are fully briefed and ripe for the Court's review.

8    **III.    DISCUSSION**

9        **a.  Exhaustion**

10    The Government argues petitioner should be required to administratively appeal

11    the IJ's custody orders to the BIA before seeking habeas relief in federal court. Dkt. 24

12    at 7[2].

13    The BIA is an appellate body within the EOIR. 8 C.F.R. § 1003.1(d)(1). The

14    Board is "charged with the review of those administrative adjudications under the [INA]

15    that the Attorney General may by regulation assign to it." *Id.* By regulation, the BIA can

16    review IJ custody determinations. 8 C.F.R. §§ 236.1(d)(3),1236.1(d)(3). Besides

17    adjudicating individual cases, "the Board, through precedent decisions, shall provide

18    clear and uniform guidance to DHS, the immigration judges, and the general public on

19

20

21    ─────────────
[2] The Ninth Circuit allows a motion to dismiss in habeas corpus cases under Rule 4 of the Rules
22    Governing Section 2254 Cases only if the petition should be summarily dismissed because on its face the
      claims are subject to a procedural default or are untimely; all claims are unexhausted; the claims in the
23    petition clearly fail to state a cognizable claim for relief because they are vague, patently frivolous or false,
      palpably incredible, conclusory; or on the face of the petition the court can "plainly see that the petition
      lacks merit as a matter of law". *See Niess v. Bludworth,* 114 F.4th 1038, 1044 (9th Cir. 2024) (quoting
24    *Gutierrez v. Griggs,* 695 F.2d 1195, 1198 (9th Cir. 1983)).

25

1  the proper interpretation and administration of the [INA] and its implementing

2  regulations." § 1003.1(d)(1).

3       Petitioner argues any appeal to the BIA would be futile considering a September

4  5, 2025, BIA decision where the BIA adopted DHS' interpretation of the INA as

5  mandating detention without bond for millions of noncitizens who reside in the U.S. *See*

6  *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025)[3]. The BIA's decision held that

7  immigration judges lack jurisdiction to hold bond hearings or grant bond to all individuals

8  charged with entering the country without inspection. *Id.*

9       The Court should find administrative exhaustion would be futile. *See Vasquez-*

10  *Rodriguez v. Garland*, 7 F.4th 888, 896 (9th Cir. 2021) ("where the agency's position

11  appears already set and recourse to administrative remedies is very likely futile,

12  exhaustion is not required."). BIA decisions are binding on immigration judges, and

13  *Hurtado* thus precludes an IJ from finding jurisdiction over noncitizens like petitioner to

14  hold a custody redetermination hearing. Therefore, judicial intervention enjoining

15  Respondents from preventing petitioner from having a bond hearing pursuant to the

16  holding in *Hurtado* is necessary to enable petitioner to avail himself of his administrative

17  remedies.

18       Because any exhaustion requirements should be waived, the Court should next

19  address the merits of petitioner's Due Process arguments.

20

21

22

23  ――――――――――――――

  [3] The Government filed their motion to dismiss and return on August 27, 2025 – before the BIA's decision

24  in *Hurtado.*

25

1

2          **b. Procedural Due Process**

3          Under the Due Process Clause of the Fifth Amendment to the United States

4   Constitution, no person shall be "deprived of life, liberty, or property, without due

5   process of law." U.S. Const. amend. V. That interest is particularly weighty when

6   government detention is at issue. "Freedom from imprisonment—from government

7   custody, detention, or other forms of physical restraint—lies at the heart of the liberty

8   that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

9   Being held in custody by the government at an earlier time does not eliminate one's

10  liberty interest in remaining on release. That is because, as courts have repeatedly

11  recognized, conditional release from physical restraint gives rise to a protected liberty

12  interest. *See generally Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (finding a parolee

13  had an interest in his continued liberty); *Young v. Harper*, 520 U.S. 143, 150–53 (1997)

14  (applying *Morrissey* to pre-parole). "[E]ven when an initial decision to detain or release

15  an individual is discretionary, the government's subsequent release of the individual

16  from custody creates 'an implicit promise' that the individual's liberty will be revoked only

17  if they fail to abide by the conditions of their release." *Calderon v. Kaiser*, No. 25-cv-

18  06695-AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (quoting *Morrissey*, 408

19  U.S. at 482).

20         These due process rights apply to noncitizens residing in the United States. The

21  Supreme Court has firmly established that "the Due Process Clause applies to all

22  'persons' within the United States, including aliens, whether their presence here is

23  lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Trump*

24

25

*v. J.G.G.*, 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (citation omitted)). Indeed, once a noncitizen is present in the United States, they have a "weighty" liberty interest in remaining in the United States, as they stand to lose rights to "stay and live and work" in the country and "to rejoin [their] immediate family." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (citation omitted); *see also, Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953).

Accordingly, as numerous courts in this circuit have held, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody. *See e.g., Ortega v. Bonnar,* 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond."); *Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022); *Rosado v. Figueroa,* No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099, at *12 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted sub nom. Rocha Rosado v. Figueroa*, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025)

### *i. Mathews v. Eldridge*

After determining that due process applies, the question is "what process is due." *Morrissey*, 408 U.S. at 481. The Constitution typically "requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

When determining what procedures are required by due process, courts apply the three-part test of *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under *Mathews*, courts must consider three factors: (1) "the private interest" at stake; (2) "the risk of an erroneous deprivation" without additional procedures and "the probable value ... of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens imposed by the additional procedures." 424 U.S. at 335.

Here, petitioner gained a liberty interest in his continued freedom when DHS elected to release him on his own recognizance under section 1226(a), which implied a promise that he would not be re-detained so long as he abided by the terms of his release. *See Henry Eduardo Bastidas Mendoza, et al. v. Sergio Albarran*, et al.,No. 25-CV-08205-VC, 2025 WL 2803431, at *1 (N.D. Cal. Sept. 26, 2025). Under federal regulation, DHS's decision to release petitioner necessarily involved a determination that he was not a danger to the community nor a flight risk. *See id.* ("The government's decision to release each of the petitioners on their own recognizance reflects a determination that they did not pose a flight risk or danger to the community."). *See also* 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.").

The Government has not argued that circumstances had changed between the petitioner's release on June 13, 2024, and his re-detention on June 24, 2025. There is

nothing in the record to demonstrates that petitioner was a flight risk or posed a danger

to the community, and there is no evidence that shows petitioner currently is a flight risk

or poses a danger to the community. *See Pinchi v. Noem*, No. 5:25-cv-05632-PCP ——

F.Supp.3d at ——, 2025 WL 2084921, at *4 (N.D. Cal. July 24, 2025) ("[Petitioner's]

release from ICE custody after her initial apprehension reflected a determination by the

government that she was neither a flight risk nor a danger to the community, and Ms.

Garro Pinchi has a strong interest in remaining at liberty unless she no longer meets

those criteria."). Having met the conditions imposed by the government upon his

release, petitioner had a liberty interest in his continued freedom.

The Government concedes that petitioner is currently in full removal proceedings

under Section 1229, and that Section 1225(b)(1) likely does not apply to petitioner

because he is not in expedited removal proceedings. Dkt. 24 at 7. Nor does the

Government contend that petitioner is subject to mandatory detention under Section

1226(c) on criminal or terrorist grounds. Nevertheless, the Government asserts that

Section 1226 does not apply to petitioner, and it may detain petitioner under Section

1225(b)(2).

In recent weeks, several district courts have held that the Government's new, and

more expansive interpretation of mandatory detention under the INA is either incorrect

or likely incorrect. *See, e.g., Rodriguez Vasquez v. Bostock, et al.* 3:25-CV-05240-TMC,

2025 WL 2782499 (W.D. Wash. Sept. 30, 2025); *Lopez Benitez v. Francis*, No. 25-Civ-

5937, 2025 WL 2267803 (S.D.N.Y. Aug. 8, 2025); *Martinez v. Hyde*, No. CV 25-11613-

BEM, —— F.Supp.3d ——, ——, 2025 WL 2084238, at *9 (D. Mass. July 24, 2025);

*Vasquez Garcia v. Noem*, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); *Lopez-Campos*

*v. Raycraft*, No. 2:25-cv-12486, —— F.Supp.3d ——, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Kostak v. Trump*, No. 3:25-cv-01093-JE, Doc. 20, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025).

Petitioner challenges his re-detention on constitutional grounds, as a violation of due process, and not on statutory interpretation grounds, therefore this Court does not need to consider whether the agency's new mandatory detention policies reflect a proper reading of the INA. The issue, instead, is whether those policies have been applied to petitioner in an unconstitutional manner. *See, e.g., Perez v. Kramer*, No. 25-cv-3179, 2025 WL 2624387, at *3 (D. Neb. Sept. 11, 2025) (declining to consider "the validity of the government's argument that [the p]etitioner should be mandatorily detained under § 1225" or the applicability of *Yajure Hurtado* and considering, instead, the due process question).

As to the first element of the *Matthews* test, the Court should hold that petitioner has an interest in his freedom from detention. Due process requires a pre-deprivation hearing before the revocation of parole. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Parolees thus have a protected liberty interest in their "continued liberty." *Id.* (citation omitted). District courts have extended this reasoning to the immigration context and have held that once released from immigration custody, noncitizens acquire "a protectable liberty interest in remaining out of custody on bond." *Diaz v. Kaiser*, No. 25-cv-5071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025) (collecting cases);

*accord M.S.L.*, 2025 WL 2430267, at *8 ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond.") (quoting *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019)); *Rosado v. Figueroa*, No. 25-cv-2157, 2025 WL 2337099, at *12 (D. Ariz. Aug. 11, 2025) (same).

As to the second *Mathews* factor, civil immigration detention must be "nonpunitive in purpose" and bear a "reasonable relation" to the authorized statutory purposes of preventing flight and danger to the community. *Zadvydas*, 533 U.S. at 690 (citation omitted). As described above, petitioner was released on his own recognizance after his initial detention at the border. By releasing petitioner, immigration officers necessarily determined that he was neither a flight risk nor danger to the community. And in the time between his release and re-detention, there has been no change in circumstances. Absent a pre-detention hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest. *See Aviles-Mena*, No. 25-CV-06783-RFL, 2025 WL 2578215, at *5 (N.D. Cal. Sept. 5, 2025).

Here, the risk of erroneous deprivation is high because a hearing would have likely revealed petitioner presents no risk to public safety and no risk of non-appearance. The Government has not argued otherwise, instead resting on Section 1225's mandatory detention provisions as a matter of law. The second factor therefore favors petitioner.

Finally, the Government has failed to show any countervailing interest against a providing a pre-detention hearing. "In immigration court, custody hearings are routine and impose a minimal' cost." *Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL

691664, at *2 (E.D. Cal. Mar. 3, 2025). There is no concern with a hearing delaying the Government's efforts to remove petitioner. Any such delay would be minimal, and in any case, petitioner is currently subject to full removal proceedings. Whether the Government conducts a pre-detention hearing –or, indeed, whether petitioner is in detention or not –will not obstruct the removal process. And detention for its own sake is not a legitimate governmental interest. *Pinchi v. Noem*, No. 5:25-CV-05632-PCP, 2025 WL 2084921, at *5 (N.D. Cal. July 24, 2025) ("Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest.").

Thus, all three of the *Mathews* factors favor petitioner, the Court should conclude petitioner's procedural due process rights were violated when he was re-detained on June 24, 2025.

### c. Substantive Due Process

Petitioner further claims his substantive due process rights were violated when he was re-detained on June 24, 2025.

Due process requires that "the nature and duration" of detention "bear some reasonable relation to the purpose for which the individual is" detained. *Jackson v. Indiana*, 406 U.S. 715, 738. (1972).

As described above, freedom from government custody "lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas*, 533 U.S. at 690. For that reason, nonpunitive government detention violates the Due Process Clause unless the detention is ordered "in certain special and narrow ... circumstances, where a special

justification ... outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* (citations omitted).

In the context of civil immigration detention, the two "regulatory goals" of the Immigration and Nationality Act provisions governing such detention—"ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community"—can provide such "special justification." *Id.* (citations omitted). "Civil immigration detention is permissible only to prevent flight or protect against danger to the community." *Zadvydas*, 533 U.S. at 690. Although "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez*, 872 F.3d at 990, 994.

Petitioner was released on his own recognizance; the justifications for civil immigration detention were not present in his case. And petitioner is neither dangerous nor a flight risk, as he has no criminal record and is diligently pursuing his immigration case. The Government has made no argument to the contrary.

In the absence of such evidence, subjecting petitioner to civil immigration detention bears no relation to the statutory purposes motivating it. Such detention would have no valid basis and would violate petitioners' right to be free from impermissible government custody. *See Zadvydas*, 533 U.S. at 690.

The Court should, therefore, find that Respondents violated petitioner's substantive due process rights when he was re-detained.

Prior to being re-detained, petitioner is entitled to a pre-detention hearing, during which a neutral decisionmaker must consider whether petitioner is either dangerous to the community or poses a flight risk such that his physical custody is required.

**CONCLUSION**

The petitioner's habeas corpus petition should be GRANTED and the Government's motion to dismiss should be DENIED. The Court should Order Respondents to refrain from re-detaining petition absent a pre-detention hearing during which a neutral decisionmaker must consider whether petitioner is either dangerous to the community or poses a flight risk such that his physical custody is required.

A proposed order accompanies this Report and Recommendation.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the above time limit, the Clerk shall set this matter for consideration on **October 23, 2025**, as noted in the caption.

Dated this 8th day of October, 2025.


Theresa L. Fricke
United States Magistrate Judge